[Cite as *State v. Glanton*, 2020-Ohio-834.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

      Appellee

v.

Antoine Glanton[1]

      Appellant

Court of Appeals No. WD-18-091

Trial Court No. 2012CR0679

**DECISION AND JUDGMENT**

Decided: March 6, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Henry Schaefer, for appellant.

* * * * *

**OSOWIK, J.**

### Introduction

{¶ 1} The defendant-appellant, Antoine Glanton,[1] was indicted in late-2012 in

Wood County on charges of possessing criminal tools and money laundering, following

---

[1] We spell appellant's first name as it is spelled in his pro se notice of appeal, i.e.,
"Antoine." We note, however, that most filings in the trial court and the Wood County
Clerk of Court's website identify the appellant as "Antone."

his arrest on suspicion of committing fraud and identity theft with respect to the purchase and reselling of cell phones. Glanton was released on bond. While he was awaiting trial, Glanton was indicted, convicted and sentenced to eight years in prison for trafficking in cocaine in another Ohio county. The instant case was placed on the inactive docket.

{¶ 2} In late-2017, Glanton filed a motion to dismiss this case on speedy-trial grounds which was denied by the Wood County Court of Common Pleas. The parties then reached an agreement whereby Glanton agreed to plead guilty as charged and to forfeit the cash recovered by police at the time of his arrest. In exchange, the state recommended that his sentence run concurrently to the one that he was already serving. The trial court's February 1, 2018 judgment entry reflects the parties' agreement.

{¶ 3} On appeal, Glanton argues that the forfeiture provision set forth in R.C. 2981.02 ("Property subject to forfeiture") is unconstitutional and that the trial court erred in denying his motion to dismiss. Because we find that Glanton lacked standing to challenge the constitutionality of the forfeiture statute and that he waived his speedy-trial rights, we affirm.

### Facts and Procedural History

{¶ 4} According to the record, Glanton was pulled over for speeding along I-75 in Wood County on November 19, 2012. After initiating the stop, Trooper A. Romero of the Ohio State Highway Patrol observed that Glanton was "extremely nervous," had trembling hands, and avoided eye contact. Glanton admitted that he was driving with a suspended license and that he was in an overdue rental car that had been rented to

2.

someone else. Glanton exited the car and consented to a "pat down," during which thousands of dollars in cash were found in his front pocket. A police dog performed a "walk-around" of the rental car and indicated the presence of a marijuana odor coming from the car. A subsequent search of the vehicle revealed the presence of two cell phones and receipts for 22 other cell phones that had been purchased in other people's names.

{¶ 5} The state alleged that Glanton was engaged in a "money scheme" that consisted of purchasing cell phones in other people's names, stealing their identity, and then selling the phones to others at a profit. The state charged Glanton with possessing criminal tools, in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree (Count 1) and money laundering, in violation of R.C. 1315.55(A)(3) and 1315.99(C), a felony of the third degree (Count 2). Both counts included a forfeiture specification, pursuant to R.C. 2941.1417(A).

{¶ 6} Initially, Glanton was released on his own recognizance. On February 25, 2013, the court revoked Glanton's "OR bond" for his failure to maintain contact with his probation officer and for testing positive for cocaine. The court set bond at "$25,000 no 10%," which Glanton posted that same day.

{¶ 7} Glanton failed to appear at the next pretrial hearing on June 24, 2013. At that time, defense counsel told the court that Glanton was "in the tri-county jail down in

3.

Scioto County, Ohio" on two felony drug trafficking offenses.[2]   The trial court ordered a state-wide warrant for Glanton's arrest, and placed the case "on the court's inactive docket until such time as the defendant is present."  (June 25, 2013 Order on Warrant).

{¶ 8} Four years later, on October 2, 2017, Glanton filed a pro se motion to dismiss his case pursuant to R.C. 2941.401.  That provision provides a mechanism for a prisoner, who is incarcerated with respect to a different case, to request that he brought to trial on any "untried indictment" within 180 days.  The trial court denied Glanton's motion for failing to comply with the statutory requirements, but it nonetheless set the matter for a pretrial conference and appointed Glanton new counsel.

{¶ 9} During a January 8, 2019 pretrial conference, Glanton's newly appointed defense counsel asserted that Glanton, although in attendance for the hearing, was still serving time with respect to his conviction in Scioto County.   At counsel's request, the court continued the hearing and ordered that Glanton remain in the local jail to facilitate ongoing plea negotiations.

{¶ 10} A change-of-plea and sentencing hearing was held on January 29, 2019.  At that time, the parties told the court that Glanton would plead guilty to the offenses set forth in the indictment, in exchange for the state recommending that he be sentenced to serve 12 months in prison, as to each offense, with the sentences to be served

---

[2] Based upon our review of the docket for case No. 13CR000249, Glanton pled guilty in the Scioto County case to one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2).  On December 3, 2013, the Scioto County Court of Common Pleas sentenced Glanton to serve eight years in prison.

4.

concurrently to one another and "with any prison time that he is serving in any other county here in Ohio." As part of the plea, Glanton's attorney verified that "the cash that was confiscated at the time of the stop [would be] forfeit[ed] under the terms of [the] agreement." Likewise, the written plea agreement, signed by Glanton, provides that Glanton agreed to "plead guilty to the indictment and consent to the forfeiture of the 8,997.00 in U.S. Currency that is identified in the forfeiture specifications." Following a colloquy, the court accepted Glanton's plea, found him guilty, and sentenced him to serve 12 months in prison as to each count, to be served concurrently with one another and concurrently with any other sentence he is serving. The order also ordered that "the $8,997 is forfeited."

{¶ 11} Glanton appealed and raises two assignments of error for our review:

I. The trial court imposed a sentence in violation of the Eight Amendment.

II. The trial court erred when it denied appellant's motion to dismiss for speedy trial purposes.

**Law and Analysis**

{¶ 12} In his first assignment of error, Glanton claims that R.C. 2981.02 ("Property subject to forfeiture") violates the Eighth Amendment to the United States Constitution. Specifically, Glanton argues that the statute violates the amendment's "Excessive Fines Clause" because it "demands that all proceeds * * * be seized regardless of their value, and hence regardless of their proportionality." Second, Glanton

5.

claims that "even if [the statute is] constitutional," the forfeiture was unlawful as applied to his case because the court conducted "no analysis of proportionality."[3]

{¶ 13} Before a court may decide the merits of a case, the party seeking relief must have standing to do so. "A person has no standing to attack the constitutionality of an ordinance unless he has a direct interest in the ordinance of such a nature that his rights will be adversely affected by its enforcement." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 30, quoting *Anderson v. Brown*, 13 Ohio St.2d 53, 233 N.E.2d 584 (1968), paragraph one of the syllabus. The doctrine of standing applies to both civil and criminal matters and generally requires a person challenging the constitutionality of a statute to demonstrate that the statute infringes upon his legally protected right. *Id., citing State v. Burgun*, 56 Ohio St.2d 354, 365, 384 N.E.2d 255 (1978). As set forth below, because we find that Glanton's forfeiture was triggered by

---

[3] Glanton argues that a recent decision by the United States Supreme Court gives rise to his claim. In *Timbs v. Indiana*, 586 U.S. –, 139 S.Ct. 682, 203 L.Ed.2d 11 (2019), the petitioner challenged a civil in rem forfeiture action against him. The court held, for the first time, that the Eighth Amendment's Excessive Fines Clause is applicable to the states. The state counters that *Timbs* amounts to a "negligible change" in forfeiture law in Ohio because the Ohio Supreme Court previously adopted a "'grossly disproportionate' standard when [reviewing] the appropriateness of forfeitures" and that Glanton's forfeiture was well within that standard. Appellee's brief at 7. We note that the retroactivity of *Timbs,* which was decided *after* final judgment was entered in this case, has not been established. *See Barton v. Davis*, U.S.Dist. No. CV 3:19-0376 (S.D.Tex. Nov. 25, 2019). Moreover, given our conclusion in this case –that Glanton lacks standing to challenge the constitutionality of the statute—we express no opinion with respect to the substance of his claim.

operation of the plea agreement and not by statute, we conclude that he lacks standing to challenge the constitutionality of R.C. 2981.02.

{¶ 14} R.C. 2981 et seq. governs both civil and criminal forfeitures in Ohio with regard to contraband, proceeds, and criminal instrumentalities. *See* R.C. 2981.02(A). Upon the commission of an offense, "[a] law enforcement officer may seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). The state then acquires provisional title and retains the property until a final adjudication can occur by means of either a criminal forfeiture specification (R.C. 2981.04) or a civil forfeiture petition (R.C. 2981.05). R.C. 2981.03(A)(1). Property is not subject to forfeiture in a criminal case "unless the * * * count in the indictment * * * specifies * * * the nature and extent of the alleged offender's interest in the property, a description of the property * * * and * * * the alleged use or intended use of the property in the commission or facilitation of the offense." R.C. 2941.1417(A). *See, e.g., State v. Trivette*, 195 Ohio App.3d 300, 2011-Ohio-4297, 959 N.E.2d 1065, ¶ 8 (9th Dist.).

{¶ 15} When property is forfeited through a plea agreement, the forfeiture is "not 'effectuated by operation of the statutory provisions governing forfeiture of contraband, but rather by the parties' agreement.'" (Other internal quotation omitted.) *State v. Sammor*, 9th Dist. Summit No. 24094, 2008-Ohio-4847, ¶ 7, quoting *State v. Fogel*, 9th Dist. Lorain No. 04CA008498, 2004-Ohio-6268, ¶ 7 ("[A]dherence to statutory forfeiture procedures is unnecessary if there is a signed plea agreement * * * acknowledging that, as a condition of the plea, property seized by the state is forfeited."). Likewise, the Fifth

7.

District has held that a disposition of confiscated property that is made pursuant to a plea agreement is not subject to Chapter 2981. *State v. Spencer*, 5th Dist. Fairfield No. 14-CA-42, 2015-Ohio-3064, ¶ 21 ("It is of great significance to us that disposition of firearms ordered in this case is not a 'forfeiture' per se as described in Chapter 2981 of the Ohio Revised Code. If [it was], disposition would be controlled by R.C. 2981.12 * * * Instead, this is an agreement ancillary to appellant's negotiated plea * * *."). *Accord State v. Whitmore,* 162 Ohio App.3d 659, 2005-Ohio-4018, 834 N.E.2d 833, ¶ 10 (6th Dist.) ("When there is a plea agreement signed by the defendant, enumerating specifically what property the defendant is forfeiting and why, with an acknowledgement by the defendant that he understands the agreement, the statutory requirements may be abandoned."). In *Whitmore,* this court found that forfeiture (under Ohio's former forfeiture statute) was improper because the judgment entry lacked any explanation of the circumstances of the plea, the plea agreement did not set forth the property that was to be forfeited, and that there was no acknowledgment by appellant that he understood the agreement. *Id.* at ¶ 10.

{¶ 16} By contrast, the plea in this case included Glanton's express forfeiture, at hearing, to "the cash that was confiscated at the time of the stop" and, in writing, to "the forfeiture of the $8,997.00." Indeed, Glanton does not challenge his plea on forfeiture grounds. Therefore, because the forfeiture was ancillary to the plea agreement and not Chapter 2981, Glanton has no legally protected interest vis-a-vis that statute. It follows that Glanton has no standing to challenge the constitutionality of R.C. 2981.02 or whether

8.

the forfeiture was proportionate in his case. *State v. Wade,* 8th Dist. Cuyahoga No. 854444, 2005-Ohio-4823, ¶ 11 ("It is clear from the record that the forfeiture of the seized money was part of the plea agreement and, as such, the court lacked authority to alter the plea agreement and order the return of the forfeited property."). For these reasons, we find that Glanton's first assignment of error is not well-taken.

{¶ 17} In his second assignment of error, Glanton argues that the trial court erred when it "denied [his] motion to dismiss for speedy trial purposes."

{¶ 18} Ohio recognizes a statutory and a constitutional right to a speedy trial. R.C. 2941.401 is a "speedy-trial statute [that is] applicable only to defendants who are imprisoned in correctional institutions in the state of Ohio and facing charges for crimes separate from those for which they are already imprisoned." *See, e.g., State v. Irish*, 3d Dist. Mercer No. 10-18-13, 2019-Ohio-2765, ¶ 13, *appeal not allowed*, 157 Ohio St.3d 1484, 2019-Ohio-4600, 134 N.E.3d 207. The statute requires that a qualifying defendant "shall" be brought to trial within 180 days. Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution each provide a constitutional right to a speedy trial. The constitutions do not specify any timeline required to ensure the protection of that right. Glanton argues that the state deprived him of both his statutory and constitutional right to a speedy trial.

{¶ 19} The state counters that because Glanton pled guilty, he waived his right to a speedy trial. In response, Glanton points to his motion to dismiss and the absence of an express waiver as evidence that he did not waive his speedy-trial rights in this case.

9.

**{¶ 20}** A guilty plea constitutes a complete admission of guilt. Crim.R. 11(B). "[A] defendant who * * * voluntarily, knowingly, and intelligently enters a guilty plea with the assistance of counsel may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." (Quotation omitted.) *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 117. A plea of guilty "effectively waives all appealable errors" at trial unrelated to the entry of the plea. *Id.*, citing *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1990), paragraph two of the syllabus.

**{¶ 21}** It is well-settled that "a plea of guilty waives a defendant's right to challenge his or her conviction on statutory speedy trial grounds pursuant to R.C. 2945.71(B)(2)." *Kelley* at paragraph one of the syllabus, *following Montpelier v. Greeno*, 25 Ohio St.3d 170, 170-171, 495 N.E.2d 581 (1986). The law is "less clear" as to whether that same rule applies to claims of constitutional speedy-trial violations. *State v. Watson*, 1st Dist. Hamilton Nos. C170598, C-170648, 2018-Ohio-4971, ¶ 4. In *Watson,* the First District "reaffirm[ed]" its conclusion that a guilty plea waives a defendant's constitutional speedy trial right. *Id.* at ¶ 5. It reasoned,

> Both the Ohio Supreme Court and this court have stated that the Ohio speedy-trial statutes are the state's method of implementing the right to a speedy trial contained in the United States and Ohio Constitutions. *State v. Adams,* 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989) * * *

The Ohio Supreme Court has also specifically stated that the statutory speedy-trial provisions set forth in R.C. 2945.71 et seq. are "coextensive with the constitutional speedy trial provisions. *State v. King,* 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994) * * * Because they are coextensive, a defendant, by entering a guilty plea, generally waives both the statutory and the constitutional right to a speedy trial." *Watson* at ¶ 7.

{¶ 22} Likewise, the Seventh District has found that "a guilty plea waives an offender's right to raise both statutory and constitutional speedy trial claims." *State v. Smith*, 7th Dist. Columbiana No. 07CO10, 2007-Ohio-6913, ¶ 10.

{¶ 23} By contrast, the Eighth and Ninth Districts have found that because the statutory and constitutional speedy-trial rights are separate concepts that require "separate analyses," a guilty plea does not result in a waiver of an offender's constitutional right to a speedy trial. *Watson* at ¶ 6, citing *State v. Branch,* 9 Ohio App.3d 160, 162, 458 N.E.2d 1287 (8th Dist.), *accord State v. Williams*, 9th Dist. Medina No. 2273-M, 1994 WL 135309 (Apr. 20, 1994). The Second and Fourth Districts have reached "both conclusions." *See, e.g., State v. Johnson*, 2d Dist. Greene No. 2013-CA-1, 2013-Ohio-4077, ¶ 4; *State v. Bishop*, 4th Dist. Vinton No. 02CA573, 2003-Ohio-1385, ¶ 5 (citing cases).

{¶ 24} Recently, in *State v. Turski*, 6th Dist. Lucas No. L-18-1217, 2019-Ohio-3604, ¶ 7, the defendant entered an *Alford* plea to multiple felonies, and the trial court imposed the agreed-upon sentence of ten years. On appeal, the defendant pointed to the

11.

absence of any speedy-trial waiver and his ignorance of his speedy-trial rights in general as evidence that he did not waive such rights by entering a plea. His assignment of error included statutory and constitutional speedy-trial violation claims.

{¶ 25} In denying the appeal, we determined that the trial court had "fully complied" with Crim.R. 11(C) when advising the defendant of his constitutional and non-constitutional rights. Second, we noted that "a [trial] court's failure to inform a defendant that his guilty plea would waive a speedy-trial violation issue on appeal [does] not render the plea involuntary." *Id.* at ¶ 10, citing *State v. Snyder,* 7th Dist. Mahoning No. 03MA152, 2004-Ohio-3366, ¶ 16-17 and *State v. Chiles,* 8th Dist. Cuyahoga No. 103179, 2016-Ohio-1225, ¶ 13. And third, we concluded that "[a]n objection based upon a claimed denial of the right to a speedy trial is one of the constitutional protections waived by a defendant entering a guilty or *Alford* plea * * *." *Id.* at ¶ 7.

{¶ 26} We reach the same result today, and we specifically find that a defendant, by entering a guilty plea, generally waives both the statutory and the constitutional right to a speedy trial. Next, we address Glanton's argument that, to the extent his guilty plea is considered to have waived his speedy-trial rights, his plea was entered involuntarily, unknowingly, and unintelligently.

{¶ 27} At the January 29, 2018 plea hearing, the trial court fully complied with Crim.R. 11(C) by ensuring that Glanton was clearheaded and had not been forced into entering the plea, that he understood the effect of his guilty plea and the nature of the charges and the maximum penalties. The court informed Glanton that by entering the

12.

plea he was giving up his constitutional right to a jury trial and the requirement that the charges against him be proven beyond a reasonable doubt, the right to call and confront witnesses, and the right against self-incrimination. Therefore, Glanton's plea will not be considered to have been entered involuntarily, unintelligently, or unknowingly, notwithstanding the absence of any explicit speedy-trial waiver. By pleading guilty, Glanton waived those claims.

{¶ 28} Moreover, even if Glanton had not waived his speedy-trial rights, he failed to establish a statutory or constitutional violation.

{¶ 29} With respect to his statutory claim, R.C. 2941.401 may be invoked when a defendant "causes to be delivered to the prosecuting attorney and the appropriate court" the following items: a written notice the defendant's place of imprisonment, a request for a final disposition, and a certificate of the warden having custody of the prisoner. Subject to continuances allowed by the statute, a qualifying defendant "shall be brought to trial within one hundred eight days." Generally, "statutory speedy-trial time will not begin to run until the defendant files a request for disposition in accordance with R.C. 2941.401." *Irish* at ¶ 17, citing *State v. Ondrusek*, 9th Dist. Lorain Nos. 09CA009626 and 09CA009673, 2010-Ohio-2811, ¶ 6-12. If a defendant is not brought to trial within the time provided, his case "shall" be dismissed with prejudice. *Id.*

{¶ 30} Based upon our review of the record, Glanton never "cause[d] to be delivered" a request for a final disposition and therefore never "triggered the process to cause him to be brought to trial within 180 days of his notice and request." *State v.*

13.

*Larkin,* 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, ¶ 19.  Accordingly, the trial court did not err in denying Glanton's October 2, 2017 motion to dismiss. Moreover, even if Glanton had properly invoked the statute on that date, he entered his guilty plea 119 days later, on January 29, 2018.  Therefore, the case was resolved well within the 180-day requirement set by R.C. 2941.401.  *Accord Irish* at ¶ 19.  In sum, even if Glanton had not waived his speedy-trial claim by pleading guilty, his claim would still fail under R.C. 2941.401.

{¶ 31} Nor would we find that Glanton's constitutional right to a speedy trial was violated.  "To determine whether a defendant has been deprived of [his] constitutional speedy-trial rights, a court must balance four factors:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant."  *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997) and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).  In balancing these four factors, the court must examine the totality of the circumstances; no one factor is controlling. *Id.*

{¶ 32} Here, Glanton correctly asserts that the nearly-62 month delay between the indictment and the entry of his guilty plea is presumptively prejudicial.  *Doggett v. United States*, 505 U.S. 647, 651-652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).  In *Doggett,* the United States Supreme Court explained that a finding that the delay is

14.

presumptively prejudicial merely triggers the *Barker* balancing test. *Id.* at 651-652. Glanton does not address the other three factors.

{¶ 33} The second *Barker* factor considers the reasons given for the delay. Delay that is caused by the defendant does not count against the state. *State v. Triplett*, 78 Ohio St.3d 566, 570, 679 N.E.2d 290 (1997). Here, the record reflects that delay in this case is mostly attributable to Glanton. Based upon our review of the docket, Glanton's multiple filings prior to June 25, 2013—when he failed to appear for a pretrial conference— resulted in five months of tolling, which were charged to him under R.C. 2945.72. After June 25, 2013, Glanton waited 51 months, until October of 2017, to assert his speedy-trial rights and to notify the court and prosecutor of his "change of address." Glanton was certainly aware of the case against him but failed to give the requisite notice. While Glanton accuses the state and trial court of "willful blindness" as to his location, there is nothing in the record to support his claim. *Accord Irish* at ¶ 35 ("While [the defendant's location] could have been discovered by searching the [Ohio Department of Rehabilitation and Correction's] website, nothing in the record indicates that the State willfully refused to take appropriate steps to determine [his] precise location."). And, R.C. 2941.401 does not require the state to exercise reasonable diligence to locate an incarcerated defendant or to act until a request for final disposition has been delivered. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 20-22. Given our finding, that 56 of the 62 months' delay are attributable to Glanton, we conclude that this second factor weighs against Glanton.

15.

{¶ 34} "The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right." *State v. Rice*, 1st Dist. Hamilton No. C-150191, 2015-Ohio-5481, ¶ 27, citing *Barker* at 529. The issue in these cases frequently centers on how much time elapsed between the time the defendant learned of the untried indictment and the assertion of the defendant's right to a speedy trial. *See, e.g., Irish* at ¶ 36 (citing cases). Here, there was a never a time that Glanton was unaware of the instant case and therefore no excuse to have waited 51 months to assert his speedy-trial right. Glanton's failure to assert that right for over four years weighs against his constitutional claim. We weigh the third factor against Glanton.

{¶ 35} Finally, we consider whether Glanton was prejudiced by the delay. In considering the prejudice, the U.S. Supreme Court has held prejudice "should be assessed in the light of the interests which the speedy trial right were designed to protect * * *: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker* at 532. The *Barker* court elaborated that "[o]f these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

{¶ 36} In this case, the first interest protected by the right to a speedy trial is not implicated. That is, at all times relevant to Glanton's speedy-trial claim, he was either out on bond or incarcerated for unrelated offenses. *Irish* at ¶ 42 (No prejudice shown where the defendant "was not threatened with the prospect of oppressive pretrial

incarceration [because] his liberty was already severely restrained" in a different case.). With respect to the second interest, because Glanton was aware of this case for 51 months before asserting his speedy-trial right, he cannot and indeed has not claimed that the pending nature of this case caused him undue anxiety. With respect to the final factor, while there is no evidence in the record as to how Glanton intended to defend himself against the charges and whether that evidence was compromised over the passage of time, we note that Glanton has made no such claim. Moreover, the fact that he received a sentence in the instant case that is concurrent to the one he is currently serving militates against a finding of prejudice. *Irish* at ¶ 46.

{¶ 37} A balancing of the four factors in the *Barker-Doggett* analysis shows that the first factor is weighted in Glanton's favor, while the other three are weighted in the state's favor. Therefore, even if Glanton had not waived his constitutional speedy-trial claim, it would still fail. Accordingly, we find Glanton's second assignment of error is not well-taken.

{¶ 38} The February 2, 2018 judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Glanton is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.